United States District Court
Southern District of Texas
**ENTERED**
February 22, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AARON RAY PARRISH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-3717 |
| | § | |
| NANCY A. BERRYHILL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[2] in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document No. 10) and Plaintiff's Cross Motion for Summary Judgment (Document No. 12). After considering the cross motions for summary judgment, each side's Response to the other's Motion for Summary Judgment (Document Nos. 14 & 15), the administrative record, the written decision of the Administrative Law Judge dated August 11, 2015, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REMANDED to the Commissioner for further proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Carolyn W. Colvin as the defendant in this case.

[2] On September 27, 2016, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 9.

I.  **Introduction**

Plaintiff Aaron Ray Parrish ("Parrish") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") on his claim for disability insurance benefits. In one claim, Parrish argues that "Defendant failed to consider all of the evidence." Plaintiff's Motion for Summary Judgment (Document No. 12) at 1. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

II. **Procedural History**

On or about January 25, 2013, Parrish filed an application for disability insurance benefits ("DIB"), claiming that he had been unable to work since April 1, 2009, as a result of post-traumatic stress disorder, depression, and chronic leg and back pain (Tr. 203-205; 222). The Social Security Administration denied his application at the initial and reconsideration stages. After that, Parrish requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Robert N. Burdette, held a hearing on May 12, 2015, which was re-convened on July 16, 2015, at which Parrish's claims were considered *de novo*. (Tr. 29-46). Thereafter, on August 11, 2015, the ALJ issued his decision finding Parrish not disabled. (Tr. 10-25).

Parrish sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in

2

reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On October 19, 2015, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's decision thus became final.

Parrish filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III.     Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v.*

3

*Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914

F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Parrish had worked at the substantial gainful activity level after the alleged onset date of April 1, 2009. In particular, the ALJ determined that Parrish had exceeded the substantial gainful activity level in 2012 by earning $10,138.77, but that his earnings in 2013 "did not rise to the level of substantial gainful activity." (Tr. 12). At step two, the ALJ determined that Parrish had the following severe impairments: lumbar spine degenerative disc disease, major depressive disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and personality disorder. (Tr. 12). At step three, the ALJ concluded that Parrish did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 1.04, 12.04, 12.06 and 12.08 . (Tr. 13-15). Prior to consideration of steps four and five, the ALJ determined that Parrish had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift/carry 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for four hours in an eight hour day, 30 minutes at-a-time. He cannot climb ropes, ladders or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He would need to avoid even moderate exposure to extreme heat and avoid concentrated exposure to hazards. The claimant can perform detailed but not complex tasks. He is limited to frequent interaction with the general public and coworkers." (Tr. 15-16). Using that residual functional capacity assessment, the ALJ concluded, at step four, that Parrish could not perform his past work. At step five, using that same residual functional capacity assessment, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the regional and national economy that Parrish could perform, including small products assembler, electronics

worker, and assembly press operator, and that Parrish was, therefore, not disabled.

In this appeal, Parrish argues that the ALJ did not consider all the evidence, particularly that related to his limitations in three areas: activities of daily living, social functioning and concentration, persistence or pace. According to Parrish, "his impaired psychiatric status meets or equals Defendant's disability listing for Depression." Plaintiff's Motion for Summary Judgment (Document No. 12) at 29.

## V. Discussion

Parrish argues that the ALJ did not consider all of the evidence in the record, and then proceeds to enumerate the evidence not mentioned by the ALJ, which he claims would have supported a finding of disability. While agreeing with the Commissioner that the ALJ is not required to discuss each and every piece of evidence in the record, *see Castillo v. Barnhart*, 151 F.App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."), much of evidence identified by Parrish reveals an infirmity in the ALJ's decision at step three as it relates to Parrish's mental impairment(s).

In determining that Parrish did not meet Listings 12.04, 12.06 and 12.08, for affective disorders, anxiety disorders, and personality disorders, the ALJ determined that Parrish had only moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. The entirety of the ALJ's consideration of Listing 12.04, 12.06 and 12.08 is as follows:

The severity of the claimant's mental impairments, considered singly and in

combination, did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of one every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant had mild restriction. The claimant is capable of performing personal care and performing household chores, driving, and shopping independently (5E).

In social functioning, the claimant had moderate difficulties. The claimant reported not having any friends and does not spend time with others. However, the claimant was able to maintain a relationship and get married during the adjudicative period. The medical evidence indicates the claimant is easily irritated with others and avoids crowds.

With regard to concentration, persistence or pace, the claimant had moderate difficulties. Mental status examinations indicate immediate and remote memory deficits with impaired concentration. However, the claimant is able to watch television and movies and play video games, which requires a level of concentration. The claimant's medicinal side effects affect his ability to concentrate and are reflected in the established residual functional capacity.

As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration. The claimant has not been hospitalized for at least two weeks for psychiatric symptoms.

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied. The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 14-15). Although the ALJ did, later on in his RFC determination, detail the evidence in the record that supported the mental limitations he found ("can perform detailed but not complex tasks. He is limited to frequent interaction with the general public and coworkers), the ALJ gave short shift

to the evidence in the record in his determination that Parrish had moderate, but not marked, difficulties in maintaining both social functioning and concentration, persistence or pace.

The ALJ's step three analysis is problematic for two reasons: (1) it cannot be ascertained what evidence, other than which was mentioned, the ALJ considered in determining that Parrish had moderate, but not marked, difficulties maintaining social functioning and/or concentration, persistence or pace; and (2) it cannot be determined whether the ALJ considered the entire "adjudicative period" when he determined that Parrish had moderate, but not marked, difficulties maintaining social functioning and/or concentration, persistence or pace.[3] The entire stated basis for the ALJ's determination that Parrish had moderate difficulties maintaining social functioning is the fact that "the claimant was able to maintain a relationship and get married during the adjudicative period." (Tr. 15). The ALJ is correct that Parrish got married, but the ALJ did not mention, and it cannot be determined whether he considered, that Parrish's mental health treatment notes from the Veteran's Administration ("VA") *consistently* note Parrish's social and family relationship problems notwithstanding his ability to get married and/or have a girlfriend, (Tr. 328-29; 331; 361-62; 527; 708; 734; 742-43; 746; 754; 759; 760; 763; 806; 807; 811; 825; 830; 834; 841; 846-47; 864; 872; 901; 1310), and consistently note Parrish's avoidance of people and crowds and/or feelings of attachment and withdrawal (Tr. 328; 337; 361; 584; 807; 971; 1365; 1369). In 2010, and again in 2011, Parrish was homeless, due, in part, to relationship and family problems. (Tr. 719-720; 732;

---

[3] At step one, the ALJ determined that Parrish had met the substantial gainful activity threshold in 2012 when he earned $10,138.77. Parrish argues that the ALJ's substantial gainful activity determination was erroneous in that the substantial gainful activity earnings threshold for 2012 was $12,120.00. While the Commissioner does not address this argument on the merits, it cannot be determined on this record whether the ALJ's step three determination was affected by any incorrect step one determination that Parrish was engaged in substantial gainful activity in 2012.

734; 806; 830; 835; 864). In addition, in 2013, following the death of his father, Parrish left his wife and moved to Las Vegas, where he lived with this mother for a short time before returning to Houston in 2014 (Tr. 394; 1410). Both before and after he moved to Las Vegas, Parrish reported that he was having relationship problems (Tr. 328; 337, 361-362). As for his concentration, persistence and pace, the ALJ again correctly noted that Parrish could "watch television and movies and play video games, which requires a level of concentration" (Tr. 15), but the ALJ again did not mention any other record evidence. For example, the ALJ did not mention or note any of Parrish's complaints to his medical providers over the years about his problems with concentration (Tr. 358; 362; 754; 872; 912-13; 1366), or his short term memory deficits (Tr. 366; 1369), and did not mention or note Parrish's testimony at the administrative hearing, or the statements of Parrish's wife that he cannot complete tasks, even those around the house (Tr. 69, 232-235). He also did not mention, with any specificity, the effect Parrish's multiple medications – for both his chronic pain and his mental impairments – have on his ability to maintain concentration, persistence or pace, despite Parrish's testimony about such at the administrative hearing (Tr. 60) and his complaints about such in his medical records (Tr. 357-70; 393-99).

Upon this record, it cannot be determined whether the ALJ considered all the relevant evidence at step three in determining that Parrish did not meet Listing 12.04, 12.06 or 12.08. The record is over 1500 pages, and includes substantial records of mental health treatment Parrish received at the VA in Omaha, Las Vegas and Houston. The record also contains the VA service connection disability rating of 90% – 50% of which is attributable to Parrish's depression (Tr. 320), documentation of the numerous mental health medications Parrish has taken over the years,

including Paxil, Effexor, Quetiapine (Seroquel), Cymbalta and Zoloft, and GAF scores[4] for Parrish, at least for a significant period of time in 2010 and 2011, of less than 50 (Tr. 527-531; 734; 742-745; 745-746; 754-759; 785; 811; 825-26, 841; 872-880; 902), indicating "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition, Text Revision (DSM-IV-TR), at 34. All this evidence is relevant to whether Parrish had moderate or marked difficulties[5] in social functioning and concentration, persistence or pace during the adjudicative period (April 1, 2009, the alleged onset date, through August 11, 2015, the date of the ALJ's decision).

Because the record does not establish that the ALJ considered all the of relevant evidence at step three and because it cannot be said that "substantial evidence" supports that step three finding given the ALJ's stated bases therefor, remand is warranted.

---

[4] The Global Assessment of Functioning ("GAF") is a measurement "with respect only to psychological, social and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition (DSM-IV), at 32). A GAF of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Edition, Text Revision (DSM-IV-TR), at 34. A GAF of 41-50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* A GAF of 31-40 denotes "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

[5] For a limitation to be characterized as moderate,"Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." For a limitation to be characterized as marked, "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1

## VI. Conclusion and Order

Based on the foregoing, and the absence of substantial evidence to support the ALJ's determination at step three as Parrish's mental impairment(s), it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 12) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 10 is DENIED, and this case is REMANDED to the Social Security Administration pursuant to 42 U.S.C. § 405g, for further proceedings consistent with this opinion.

Signed at Houston, Texas, this 21st day of February, 2017.

*Frances H. Stacy*
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE